UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
BASEBALL QUICK, LLC,                                         :
                                                             :
               Plaintiff,                                  :   Civil Action No. 11-CV-01735
                                                             :   (TPG)(MHD)
v.                                                           :   ECF CASE
                                                             :
MLB ADVANCED MEDIA, L.P., ET AL.,                            :
                                                             :
               Defendants.                                 :
-------------------------------------------------------------X

**DECLARATION OF MATTHEW D. MURPHEY IN SUPPORT OF PLAINTIFF BASEBALL QUICK, LLC'S MOTION FOR RELIEF PURSUANT TO RULE 56(D)**

      I, Matthew D. Murphey, make the following Declaration under penalty of perjury.

      1.      I am a member in good standing of the bars of the States of California and Texas and am a partner with the law firm of Troutman Sanders LLP, counsel for Plaintiff Baseball Quick, LLC ("Plaintiff" or "Baseball Quick" or "BQ") in this action against Defendant MLB Advanced Media, L.P. ("MLBAM"). The following facts are set forth in support of BQ's request for relief pursuant to Rule 56(d), Fed. R. Civ. P., in light of MLBAM's pending summary judgment motion. I have personal knowledge of these facts, and if called as a witness would testify to them as follows.

### Efforts to Obtain Discovery and Why the Efforts to Obtain Discovery Have Been Unsuccessful

      2.      After this case was transferred here from the Southern District of California, this Court held an informal conference on May 13th, at BQ's request. At the conference, BQ requested that discovery commence and that the Court set a claim construction briefing schedule; MLBAM requested a briefing schedule for the filing of an early summary judgment on the issue of infringement of the patent-in-suit, U.S. Patent No. 7,628,716 ("the '716 patent"). The Court

stated that MLBAM could proceed with its motion and ordered that the parties agree upon a briefing schedule.  The Court never suspended the operation of Rule 26 nor ordered that discovery not commence in the usual course pursuant to the provisions of the Federal Rules and this Court's local rules.

3. In fact, a few weeks after the Court's conference, pursuant to and in compliance with its Rule 26(f) obligations, MLBAM's lead counsel Cynthia Franecki participated in the preparation of a joint Rule 26(f) planning conference report, which was filed with the Court. (Report of Parties' Planning Meeting and Proposed Discovery Plan (Dkt. 51) ("Rule 26(f) Report")).

4. In the Rule 26(f) Report, BQ proposed a schedule providing for claim construction proceedings, fact discovery, and expert discovery, as well as provisions to govern various aspects of discovery.  (Dkt. 51 p. 7-12).  MLBAM did not respond to the scheduling proposals nor the proposed discovery provisions.  Ms. Franecki stated to me in two subsequent telephone calls after the May 13th conference that she believed discovery prior to summary judgment would be contrary to an alleged and unidentified order of this Court, which she claimed stayed the operation of Rule 26 and discovery.  I did not hear this Court make any such order during the conference, and there is no such order in the record.

5. In light of MLBAM's planned summary judgment motion on infringement, Plaintiff served written discovery in early June. (Plaintiff Baseball Quick's First Set of Requests for Production of Documents, Electronically Stored Information and Things to Defendant MLB MLBAM (Nos. 1-67) (Ex. A); Plaintiff Baseball Quick's First Set of Interrogatories to Defendant MLB MLBAM (Nos. 1-11) (Ex. B)).  MLBAM's responses and objections to this

written discovery were due on July 6, 2011; MLBAM served no responses or objections to BQ's discovery.

      6.      Pursuant to Rule 26, BQ has also served its Initial Disclosures. (Plaintiff Baseball Quick's Initial Disclosures (Ex. C)). MLBAM has not served its Initial Disclosures.

      7.      During a meet and confer on July 15th, Ms. Franecki stated that MLBAM does not intend to respond to BQ's discovery, based on her claim that discovery has been stayed. BQ has separately sought an order compelling responses, by way of letter delivered to this Court on July 21, 2011.

      8.      During the July 15th telephone conference, Ms. Franecki offered to "consider" providing specific discovery needed by BQ in responding to MLBAM's discovery motion. Mr. Heaton of my firm thereafter provided Ms. Franecki with specific requests in writing – the same requests being made here through this motion and declaration – and also requested that MLBAM agree to stay BQ's deadline for its summary judgment opposition pending such discovery. (Ex. D).

      9.      On Friday, July 22, 2011 (the date BQ's Opposition to MBLAM's motion for summary judgment is due), at 5:16 pm Eastern time, Ms. Franecki sent an email to Mr. Heaton of my firm's New York office, and claimed she did not understand the needed discovery, and further asked Mr. Heaton to set up a telephone call with her. No discovery response(s) were included in Ms. Franecki's July 22 email to Mr. Heaton. (A true and correct copy of Ms. C. Franecki's email dated July 22, 2011 is attached hereto as (Ex E)).

      10.      As such, BQ has sought the discovery needed to respond to MLBAM's motion, yet MLBAM has refused to respond.

**The Facts Sought and How Those Facts Are Reasonably Expected to Create a Genuine Issue of Material Fact**

11. MLBAM's summary judgment motion relies upon a statement of purported "undisputed" facts. BQ disputes many of these facts, none of which have been tested through the discovery process. As BQ explains in its summary judgment opposition, at least two of the premises upon which MLBAM relies preclude summary judgment: 1) MLBAM's claim that after the issuance of the patent, no Condensed Games show the final pitch to each batter; and 2) MLBAM failed to disclose to the Court that Condensed Games are available through a smartphone application ("At Bat 11") and through MLB.TV, both of which require payment. I expect that discovery will further confirm that many of MLBAM's "undisputed" facts are incorrect.

12. For example, MLBAM wholly failed to disclose that Condensed Games are available through numerous means in addition to the Internet, such as smartphone applications (Apple iPhone®, iPod® touch, iPad®, Blackberry®, Android®). MLBAM knows that all of these platforms are accused, as they were included in the Definition of Accused Products provided when BQ served its document requests.

13. BQ seeks discovery as to all Accused Products, as defined herein:

> The term "Accused Product(s)" shall mean the MLBAM shortened recorded baseball game product currently known as "Condensed Games." It shall be understood to include at least all versions or derivatives of: a) all Condensed Games whether made available using the Condensed Games name or another name; b) Condensed Games made available to the public through any medium including but not limited to the internet and/or portable communication devices such as Apple (iPhone®, iPod® touch, iPad®), Blackberry® and/or Android® devices; c) Condensed Games made available to the public through portable communication device applications including but not limited to all versions of "At Bat for iPhone® and iPod® touch," "At Bat for iPad®," "At Bat for Blackberry®," and "At Bat for Android®"; d) Condensed Games made available through MLB.TV; e) Condensed Games made available for viewing by MLBAM and/or any other entity through agreement with MLBAM; and f) Condensed Games

        made in the United States through the editing of recorded games whether or not made available for viewing in the United States.

    14. I expect that discovery will show that at least the following "undisputed" facts claimed by MLBAM are incorrect: 18, 20-30, 57-61.  As examples:

        (a) That the content of Condensed Games made available both currently and in the past, includes the final pitch to every batter.  (No. 21, 22, 23, 57, 58);

        (b) That there have been Condensed Games since the end of the 2009 baseball season that include the final pitch to each batter (Nos. 22, 23, 57, 58);

        (c) The existence of numerous means of accessing Condensed Games in addition to the MLB.com Media Center (No. 18);

        (d) Payment previously required for access to Condensed Games through the MLB.com Media Center (No. 18, 24-30, 59-61);

        (e) Payment currently required for access to Condensed Games through at least some of the Accused Products (No. 24-30, 59-61);

        (f) That the "subjective" editing process has changed over time (No. 20, 21); and,

        (g) The existence of MLBAM's "Terms of Use" and other agreements that are mandatory for viewing Condensed Games by subscribers.  (No. 18, 24-28, 59-61).

    15. BQ further requires discovery to fully respond to many of MLBAM's "undisputed" facts, having received no response from MLBAM to BQ's pending discovery requests.  These include Nos. 18, 20, 21, 22, 23, 24, 25.  As examples:

        (a) Whether MLBAM's editing process is "subjective" and the details of the editing process including any changes over time (No. 18, 20, 21, 22, 23);

(b) All means through which Condensed Games have been made available (No. 18); and,

(c) When Condensed Games that took place before the '716 patent issued were last edited. (No. 29).

16. MLBAM's summary judgment motion also relies upon a declaration of Dinn Mann, who claims to be an executive at MLBAM. Mann testifies about matters that are disputed and which have not been tested through the discovery process. I expect that discovery will show that much of the Mann declaration testimony is incorrect, and that some of his testimony is false, including at least the following statements:

(a) that Condensed Games are "compilations of highlights." (Mann Decl. ¶ 3);

(b) that Condensed Games do not fall within claim 1 of the '716 patent (Mann Decl. ¶ 4, restating the patent claim language);

(c) that none of the Condensed Games edited by MLBAM since the end of the 2009 baseball season include the final pitch thrown to each player at each appearance-at-bat (Mann Decl. ¶ 6);

(d) that MLBAM does not obtain subscribers or require a subscription for access to Condensed Games (Mann Decl. ¶ 7);

(e) that the MLB.com Media Center webpage is the only means through Condensed Games can be accessed (as suggested in Mann Decl. ¶¶ 8-9);

(f) that no subscription has ever been required to access the MLB.com Media Center webpage, for example prior to April 19, 2009 (Mann Decl. ¶ 10-11);

(g) that no editing of pre-December 8, 2009 games took place after that date (Mann Decl. ¶ 12); and,

  (h) that the e-mails attached to the Mann declaration constitute the full universe of correspondence between MLBAM and BQ and/or the inventors of the '716 patent (Mann Decl. ¶ 13-17).

  17. As such, BQ seeks discovery in order to fully respond to MLBAM's summary judgment motion, the purported "undisputed" facts, and the averments in the Mann declaration.

## The Discovery Requested

  18. Specifically, BQ requests document production and interrogatory responses, to be followed by depositions.

  19. <u>Document requests</u>:  BQ requests documents responsive to its document requests regarding the following topics:

  (a) the content (including whether the last pitch to each batter is shown) of all Accused Products[1] over time (responsive to Req. Nos. 1-2);

  (b) the editing process used to create the Accused Products, and any firmware and/or software used, including written documentation of the process, training guides, and instructions. (responsive to Req. Nos. 3-4, 7);

  (c) all changes made to any of the Accused Products and/or the editing method used to create them, and the reasons for such changes, from the initial product launch to the present time (responsive to Req. Nos. 9, 27, 29, 31);

  (d) the identity of the sources and/or vendors of any recorded components (such as the game feed) included in any of the Accused Products, and of any firmware and/or software used in the editing process (responsive to Req. No. 5);

---

[1] The term "Accused Products" is used as set forth at in Paragraph 12 herein.  In short, it includes Condensed Games as made available through any medium of access, including the Internet and smartphone applications.

(e)     at least three representative recorded samples of each Accused Product for each year, whether made, used, offered for sale, sold or imported in the United States (responsive to Req. No. 6);

(f)     any advertising, brochures, mailings, web pages, Internet materials, print advertisements and press releases regarding any of the Accused Products (responsive to Req. No. 10, 43);

(g)     the location where each Accused Product was conceived, developed, prepared and/or edited (responsive to Req. No. 12);

(h)     the identification and address of all past and present employees of MLBAM directly or indirectly affiliated with the editing process to prepare any of the Accused Products (responsive to Req. Nos. 15, 16);

(i)     communications with any external vendors, customers and potential customers regarding any of the Accused Products, including at least Real Networks, Inc., Apple Inc, and members of the general public (responsive to Req. Nos. 17, 19);

(j)     the channels of trade through which any of the Accused Products have been marketed, offered for sale and/or sold, including at least RealNetworks Inc. and Apple Inc. (responsive to Req. No. 18);

(k)     opinions or studies conducted relating to the infringement of the '716 patent, and documents controverting any purported defense of non-infringement or proposed MLBAM claim construction (responsive to Req. Nos. 22, 23, 52, 55);

(l)     MLBAM's first knowledge of U.S. Patent Application No. 09/878,860, U.S. Patent Pub. No. 2003/0060311A1, and/or the '716 patent (responsive to Req. Nos. 26, 28, 30);

    (m) revenues derived from selling each Accused Product, including sales data, gross profit, net profit, price, and number of units sold from the date when each product was first marketed up to and including the present date (responsive to Req. No. 42);

    (n) communications and evidence of meetings between MLBAM and BQ including any annotations made on any correspondence (responsive to Req. No. 50); and

    (o) MLBAM's purported defense of an alleged "license" (responsive to Req. No. 56).

  20. <u>Interrogatory Responses</u>.  BQ seeks interrogatory responses on the following topics:

    (a) identity of persons with knowledge regarding the past or current editing process used to create any of the Accused Products (responsive to Interrog. Nos. 1, 5);

    (b) identity of persons with knowledge regarding any changes, revisions or updates to any of the Accused Products and/or the editing process used to create them (responsive to Interrog. No. 3);

    (c) identity of the persons with knowledge regarding MLBAM's purported non-infringement defense.  (responsive to Interrog. No. 7); and

    (d) identity of the persons with knowledge regarding MLBAM's purported license defense (responsive to Interrog. No. 10).

  21. <u>Depositions</u>.  BQ requests that after it has had a sufficient amount of time to review MLBAM's document production, that MLBAM make Mr. Dinn Mann, MLBAM's corporate designee(s) pursuant to Fed. R. Civ. P. 30(b)(6), and at least the individuals identified by MLBAM in Paragraphs 19 (a) through (d)  available for deposition.  In the interest of promoting judicial economy and the minimization of cost, BQ did not previously request Mann's

deposition because it wanted to await the completion of MLBAM's document production. After review of the discovery received, BQ reserves the right to notice additional witnesses for deposition as appropriate.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed at San Diego, California.

Dated: July 22, 2011

Matthew D. Murphey