**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| BASEBALL QUICK, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MLB ADVANCED MEDIA, L.P., ET AL.,<br><br>Defendants. | : | Civil Action No. 11-CV-01735 (TPG)(MHD)<br>ECF CASE |

**PLAINTIFF BASEBALL QUICK, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR RELIEF PURSUANT TO RULE 56(D)**

Plaintiff Baseball Quick, LLC ("Plaintiff" or "Baseball Quick" or "BQ") provides this reply memorandum in support of its motion for relief pursuant to Rule 56(d).

## I. INTRODUCTION

Defendant MLBAM's shifting positions, withdrawn arguments, admitted, unadmitted and unexplained declaration falsehoods, and eleventh-hour "audit team" analysis speak volumes, further strengthen the need for discovery and confirm that summary judgment without discovery is unwarranted.

MLBAM's responsive brief[1] is more telling for its omissions than for its content. As examples:

- No response to the Second Circuit and Supreme Court case law that disfavor summary judgment against a plaintiff prior to discovery, appropriate "[o]nly in the rarest of cases …" *Hellstron v. United States Dep't of Veterans* Affairs, 201 F.3d 94,

[1] Citing no authority for the practice nor having sought the Court's permission, MLBAM filed its response as part of a combined memorandum also including its reply in support of its summary judgment motion. (Dkt. 73) ("MLBAM Opp."). In so doing, MLBAM skirted this Court's 10 page limit for a reply brief, having devoted more than 10 pages to its summary judgment motion in its reply.

97 (2d Cir. 2000); *see also Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 303 (2d. Cir. 2003); (Plaintiff Baseball Quick, LLC's Memorandum in Support of its Motion for Relief Pursuant to Rule 56(d) ("BQ Op.") p. 4-6);

- No response to the Federal Circuit case law stressing the need for discovery prior to summary judgment of non-infringement. *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 809 (Fed. Cir. 1999) (BQ Op. p. 7-8);
- No explanation as to why this case differs from others where summary judgment was deemed inappropriate in the face of refusals to provide discovery. *G-I Holdings, Inc. v. Baron & Budd*, 2002 U.S. Dist. Lexis 19006 (S.D.N.Y. Oct. 10, 2002); *Salazar-Martinez v. Fowler Brothers, Inc.*, 2011 U.S. Dist. Lexis 26381 (W.D.N.Y. Mar. 15, 2011); *Carpenter v. Churchville Greene Homeowner's Association, Inc.*, 2011 U.S. Dist. Lexis 17042 (W.D.N.Y. Feb. 22, 2011) (BQ Op. p. 6);
- An admission through silence that BQ has satisfied three of the four requirements for Rule 56(d) relief (*infra* p. 9-10);
- An admission that Dinn Mann signed a false declaration saying that no Condensed Games include the final pitch thrown to each batter – but offering no explanation for why or how MLBAM presented this false portrayal of its own product;
- An admission that Dinn Mann signed a false declaration denying the existence of subscription and fee based products containing Condensed Games – but again offering no explanation of why or how the Vice President of Content did not know Condensed Games were part of every subscription and fee based product offered;

- No explanation as to whether Condensed Games provided to subscribers in other countries, yet edited in the United States and/or hosted on United States servers, differ from Condensed Games provided to subscribers in the United States;
- No explanation as to whether the content of any of the Condensed Games have ever been re-edited and changed from the content originally made available for viewing; and
- No explanation for MLBAM's failure to respond to BQ's earlier Rule 56(d) discovery requests until the night BQ's summary judgment opposition was due[2].

## II. ARGUMENT

### A. MLBAM is Silent in the Face of Compelling Case Law Disfavoring Summary Judgment Prior to Discovery

The Second Circuit has stated that it is "rare" for summary judgment to be appropriate against a plaintiff where, as here, no discovery has been made available, ***Hellstron***, 201 F.3d at 97, and that summary judgment should be deferred where the nonmoving party states that it needs discovery. *Miller v. Wolpoff & Abramsn, LLP*, 321 F.3d 29, 303 (2d Cir. 2003). And the Supreme Court counsels that summary judgment against a nonmovant should be refused where there has been no opportunity for discovery of information "essential" to the opposition. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). The point is to prevent a party from being "railroaded" by an early summary judgment motion. *Celotex Corp. v.* Catrett, 477 U.S. 317, 326 (1986).

Further, the Federal Circuit cautions that summary judgment of non-infringement requires sufficient discovery, particularly when the accused components or methods are in

[22] In a further attempt to resolve the Rule 56(d) discovery requests, the parties scheduled a phone conference on July 26th, after BQ had filed its motion. MLBAM cancelled the call at the last minute and has never provided alternate times for the conversation.

dispute and under the sole custody and control of the alleged infringer. *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 809 (Fed. Cir. 1999). In *Vivid Technologies*, the Federal Circuit vacated a grant of summary judgment of non-infringement that had been granted despite a timely Rule 56(d) request. *Id.* at 810, 812.

BQ set forth these cases at length in its opening brief (p. 4-7), yet MLBAM never mentions the cases, nor attempts to distinguish them. Nor did MLBAM address the district court cases in which summary judgment has been denied when the movant refused to provide discovery. *G-I Holdings, Inc. v. Baron & Budd*, 2002 U.S. Dist. Lexis 19006 (S.D.N.Y. Oct. 10, 2002); *Salazar-Martinez v. Fowler Brothers, Inc.*, 2011 U.S. Dist. Lexis 26381 (W.D.N.Y. Mar. 15, 2011); *Carpenter v. Churchville Greene Homeowner's Association, Inc.*, 2011 U.S. Dist. Lexis 17042 (W.D.N.Y. Feb. 22, 2011); BQ Op. p. 6-7. In *G-I Holdings*, for example, the Court denied summary judgment and ordered that discovery proceed where defendants had provided no discovery and refused to make its affiants available for deposition. *G-I Holdings*, 2002 U.S. Dist Lexis at *11-16.

These cases confirm that summary judgment without discovery would be inappropriate and that many other district courts have denied motions for summary judgment under similar circumstances.

### B. MLBAM's Discovery Requests are Entirely Appropriate, Relevant, and Necessary Prior to Consideration of Summary Judgment

Contrary to MLBAM's suggestion that its motion rests solely on legal issues for which no discovery is needed, there are numerous material factual issues in dispute, including issues raised by MLBAM's own shifting factual story in support of its motion.

For example, MLBAM now admits that it presented evidence from an untruthful witness when it submitted the initial Mann Declaration.[3] Mr. Mann's second declaration admits that the first major point of his initial declaration – that no Condensed Game includes every final pitch – "may have been mistaken." Mann Dec. II[4] ¶ 5. He never admits that his second major point – that no subscription or fee is ever needed to access Condensed Games (Mann Decl. ¶ 7) – was also a blatant lie. Although having been caught in this lie MLBAM now withdraws the subscription issue from its motion (MLBAM Opp. p. 1, 20), the fact remains that its only witness testified falsely on both major points raised by its original summary judgment motion. As a result, at a minimum, the Court should allow full discovery into all of Mr. Mann's testimony before accepting anything he says as true.[5]

Multiple MLBAM positions have become moving targets: (1) from no Condensed Games with every final pitch to fifteen; (2) from no payment or subscription ever required for access to Condensed Games to "withdrawal" of that issue; and (3) from a mantra of BQ's supposed "permission" to infringe pre-patent issuance to MLBAM's "motion is not based on its licensing defense, and thus any discussion of the merits of such a defense are premature." (MLBAM Opp. p. 20). These ever-shifting positions demonstrate that MLBAM can't get its story straight about why summary judgment is warranted. Fundamentally, though, the Court should disregard Mr. Mann's testimony, just as any witness who testifies falsely is disregarded. ***Paddington Partners v. Bouchard***, 1991 U.S. Dist. LEXIS 20769, *12 (S.D.N.Y. Dec. 11, 1991); ***Villar v. Crowley***,

---

[3] Declaration of Dinn Mann in Support of Advanced Media's Motion for Summary Judgment of No Infringement (Dkt. 58) ("Mann Dec.").

[4] Declaration of Dinn Mann in Support of Advanced Media's Combined Memorandum of Law In Reply in Support of Advanced Media's Motion for Summary Judgment of No Infringement and In Response to Baseball Quick's Motion for Relief Pursuant to 56(d) (Dkt. 74) ("Mann Dec. II").

[5] Because of the bad faith nature of Mr. Mann's false statements to this Court, BQ is simultaneously moving for sanctions under Rule 56(h). Plaintiff Baseball Quick, LLC's Motion for Sanctions or Other Relief Pursuant to Rule 56(h).

900 F.2d 1489, 1497 n.9 (5th Cir. 1993) (affirming district court's decision to disregard affidavit that "contained blatant misrepresentations" and "was wholly improper and untrustworthy."). With no credible witness to support its summary judgment motion, MLBAM's motion should be denied, and BQ permitted full discovery into all of Mr. Mann's statements, including details about his eleventh-hour "audit" and claims that only fifteen Condensed Games include every final pitch. Given these prior prevarications, only full discovery, including cross-examination of Mr. Mann and members of his "audit team" under oath, will determine where the truth lies.

BQ's Rule 56(d) requests also sought discovery into the content of Condensed Games made available for viewing in other countries. (Murphey Dec.[6] ¶ 13, 19(a,g)). Indeed, in 2010, MLBAM in partnership with YouTube launched Condensed Games in Japan. (Murphey Dec. II[7] Ex. A). Despite knowing of BQ's request, the second Mann Declaration simply ignores it. Mr. Mann never states, for example, that the content of Condensed Games is the same in every country and across all platforms. It is entirely possible that there exist numerous Condensed Games made available in other countries including every final pitch to every batter.[8] Given Mr. Mann's failure to address this issue, and the fact that it is not possible to access games made available in other countries (for example MLB.jp in Japan) from the United States (due to Internet restrictions), discovery is needed to determine the content of all Condensed Games including those made available abroad, and the location where all editing occurs.

In his most recent declaration, Mr. Mann stated that the fifteen games that include "the final pitch thrown to each player at bat is contrary to the <u>goal</u> of the Condensed Games product

---

[6] Declaration of Matthew D. Murphey in Support of Plaintiff Baseball Quick, LLC's Motion for Relief Pursuant to Rule 56(d), Dkt. 65 ("Murphey Dec.").

[7] Declaration of Matthew D. Murphey in Support of Plaintiff Baseball Quick, LLC's Reply Memorandum in Support of its Motion for Relief Pursuant to Rule 56(d) ("Murphey Dec. II"), being filed concurrently herewith.

[8] The law provides that games edited in and/or made available from the United States infringe whether or not shown to subscribers here. 35 U.S.C. § 271(a).

and our subjective editing process." (Mann Dec.II ¶ 4). Mr. Mann provides no explanation about this goal – for example he never states that subscribers prefer Condensed Games that do not include every final pitch. Most likely the only "goal" of the editing process is to avoid infringement of the '716 patent by making insubstantial changes to the Condensed Games. Obviously, internal MLBAM documents describing the "goal" of the editing to eliminate an insubstantial amount of pitches to avoid infringement would be highly relevant evidence for infringement under the doctrine of equivalents. *Graver Tank & Mfg Co. v. Linde Air Products Co.*, 339 U.S. 605, 610 (1950). Similarly Mr. Mann's characterization of the "subjective" nature of the editing process is questionable: there exists evidence that a computer program objectively makes an initial cut of a Condensed Game that includes every final pitch. (Murphey Dec. II Ex. B). Mr. Mann's vague editing description therefore further bolsters BQ's request for discovery into all documents explaining the editing process, including any documents explaining the supposed "goal" and/or rationale behind the process as well as the relationship, if any, between this goal, the computer program, and subjective editing process. (Murphey Dec. ¶ 19(b)).

Additionally, MLBAM's last-minute audit does not obviate the need for discovery as the audit team merely reviewed the content of Condensed Games as they existed during a small slice of time – sometime between July 22 - August 5, 2011. They make no claim to having conducted an audit at any other time point, including during the eighteen months since the '716 patent issued in December 2009. Importantly, Mr. Mann never says that the content of Condensed Games has remained unchanged – and BQ has presented evidence that it has materially changed. MLBAM removed a substantial number of Condensed Games from its website at least once during this litigation (June 2011) (Mockry Dec.[9] ¶ 19), and there is evidence of changes to the

---

[9] Declaration of Gregory M. Mockry, In Support of Baseball Quick, LLC's Opposition to Advanced Media's Motion for Summary Judgment of No Infringement, Dkt. 68 ("Mockry Dec.").

format for Condensed Games in the past (Murphey Dec. II ¶ 5, Ex. C). Incredibly, even this week, after serving the audit report, MLBAM removed Condensed Games from its website making it impossible for BQ to verify the audit team's report that those now missing Condensed Games did not include every final pitch. (Murphey Dec. II ¶ 6, Ex. D, E, F, G). Given all these changes, discovery is needed into the content of all Condensed Games ever shown by MLBAM, including those later removed from the website, to determine whether they initially included every final pitch and were later re-edited so as to remove some final pitches. [10] (Murphey Dec. ¶ 19(a,c)).

MLBAM argues that games played prior to issuance of the '716 patent in December 2009 cannot infringe because, according to MLBAM, method claim infringement requires that all steps of a method take place after patent issuance. MLBAM's papers are silent, however, as to whether it has recorded and reedited any 2009 or earlier games after December 2009. For example, Mr. Mann never says that no 2009 games were revised in 2010 or 2011. The "recording" and "editing" steps should be construed to include any subsequent recording or editing of previously produced Condensed Games.[11] Even the limited evidence BQ has found on the Internet indicates MLBAM has previously materially changed the content of previously recorded Condensed Games. (Murphey Dec. II Ex. C). As such, discovery is needed into

---

[10] The content of all games since product launch is relevant because provisional royalty rights are available for pre-patent issuance infringement.

[11] BQ has requested full claim construction proceedings which would include construing terms such as 'recording.' The Federal Circuit has cautioned against not following all necessary steps in construing a patent. *See, e.g., Eon-Net LP v. Flagstar Bancorp*, 249 Fed. Appx. 189, 194-95 (Fed. Cir. 2007) ("We have previously held that where a district court construes a patent without following the necessary steps, we should remand the matter for further proceedings . . ."); *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002) (remand required by "district court's failure to construe the claims limitations at issue, and its inadequate factual findings on infringement").

MLBAM's historical records reflecting all recording and editing that MLBAM has conducted on Condensed Games. (Murphey Dec. ¶ 19(a-c)).

### C. Baseball Quick Has Satisfied All Rule 56(d) Requirements and Discovery Should be Granted

Again through silence, MLBAM does not dispute that BQ has satisfied three of the four Rule 56(d) requirements – i.e. (i) what facts are sought and how they are to be obtained; (iii) its previous efforts to obtain the discovery; and (iv) why those efforts have been unsuccessful. *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 303 (2d Cir. 2003) (providing the four requirements for Rule 56(d) relief).

MLBAM only disputes the second requirement for Rule 56(d) discovery – (ii) showing how the facts are reasonably expected to create a genuine issue of material fact. *Miller*, 321 F.3d at 303. Yet, the Murphey Declaration showed how numerous of MLBAM's supposed "undisputed" facts and statements of Mr. Mann would likely be disproved through discovery. (Murphey Dec. ¶ 14-16). This explanation, which is followed by a detailed list of discovery requests (Murphey Dec. ¶ 19-21), more than adequately satisfies the Rule 56(d) requirements. For the avoidance of doubt, some of the representative discovery requests are further explained here:

- As now highlighted by MLBAM's shifting position on the number of post 2009 games that include every final pitch – first no games, now 15 games, the content of Condensed Games, the editing process used to make them (including any software used), changes made to any versions of the Condensed Games over time, and recorded samples, are all relevant to infringement at least under MLBAM's proposed claim construction which requires the final pitch to every batter;

- Advertising, marketing, press releases, communications with external vendors and customers, and any other statements regarding Condensed Games all could have relevance to the content of the Condensed Games, particularly any statement that the Condensed Games include every final pitch;
- The location where the Condensed Games are edited is relevant because the editing process itself is an infringing act, even for Condensed Games not shown in the United States;
- The identification of past and present editors is relevant to potential discovery regarding the content of Condensed Games (past and present) and the editing process used to make them; and
- Opinions or studies of infringement of the '716 patent would be highly relevant particularly if contradictory to the positions MLBAM takes in its motion.

As such, BQ has fully satisfied the requirements for Rule 56(d) discovery, and respectfully requests that its motion be granted.

## III. CONCLUSION

For the reasons set forth above and in its opening brief, BQ respectfully requests that this Court deny MLBAM summary judgment motion as premature, and permit BQ to take the discovery needed to develop facts in opposition. Alternatively, BQ requests that the Court defer consideration of the motion until such time as discovery has been completed.

Dated: August 12, 2011

TROUTMAN SANDERS LLP

/s/ Matthew D. Murphey
Matthew D. Murphey (Pro Hac Vice)
TROUTMAN SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092
Telephone: 858.509.6004
Facsimile: 858.509.6040
E-mail: matt.murphey@troutmansanders.com

Douglas D. Salyers (Pro Hac Vice )
Paul E. McGowan (Pro Hac Vice )
TROUTMAN SANDERS LLP
600 Peachtree Street, N.E. Suite 5200
Atlanta, GA 30308-2216
Telephone: 404.885.3000
Facsimile: 404.885.3900
E-mail: doug.salyers@troutmansanders.com
E-mail: paul.mcgowan@troutmansanders.com

Timothy P. Heaton
TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0700
Telephone: 212.704.6417
Facsimile: 212.704.8383
E-mail: timothy.heaton@troutmansanders.com