UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------x
                                          :
BASEBALL QUICK, LLC,                      :
                                          :
                       Plaintiff,         :    11 Civ. 1735 (TPG)
                                          :
         – against –                      :    **OPINION**
                                          :
MLB ADVANCED MEDIA, L.P., et al.,         :
                                          :
                       Defendants.        :
                                          :
------------------------------------------x
```

Plaintiff Baseball Quick, LLC ("Baseball Quick") has sued MLB[1] Advanced Media, L.P. ("MLB") for infringement of Baseball Quick's U.S. Patent No. 7,628,716 (the "716 Patent"). MLB moves for summary judgment. Baseball Quick opposes the motion and moves under Federal Rule of Civil Procedure 56(d) for an order allowing it to conduct discovery to develop facts in opposition to MLB's motion for summary judgment. Baseball Quick also moves for sanctions under Federal Rule of Civil Procedure 56(h).

The motion for summary judgment is granted in part and denied in part. The motions for relief under Rule 56(d) and sanctions under Rule 56(h) are denied.

## FACTS

The following facts are undisputed, unless otherwise indicated.

---

[1] MLB stands for Major League Baseball.

Plaintiff Baseball Quick is the assignee of the rights to the '716 Patent, involving an invention by George Mockry and Greg Mockry. The Mockrys made their invention, which they call Baseball Quick, around June of 2000. As will be described more fully below, Baseball Quick is a method for shortening a baseball game to approximately fifteen minutes, by editing the game to remove routine game action (such as pitches where the baseball is not put in play) and delivering the edited recording to subscribers in a condensed version.

The Mockrys filed a provisional application with the United States Patent Office ("PTO") on June 13, 2000. The patent application was published as United States Patent Publication No. 2003/0060311 on March 27, 2003.

It is necessary to quote a portion of the published application. The reason that this is relevant is that, among other things, Baseball Quick asserts provisional rights based on this application pursuant to 35 U.S.C. § 154(d)(1).

Claim 4 of the invention claimed in the published application was a method comprised of the following steps:

> recording the appearances-at-bat for each player, in turn, plus other action that ensues during or after the appearances-at-bat;
>
> editing the recorded appearances-at-bat to leave only the last pitch thrown to each player, plus any action ensuing after that pitch and any attempts of runners on base to advance to another base; and

>presenting the edited recording game as a condensed recorded game showing important action portions of the game.

The published application also contained the following Claim 8:

>The method according to claim 4 wherein said step of presenting the edited game as a condensed recorded game includes delivering the recorded game to subscribers over the Internet.

On August 1, 2000, the Mockrys approached MLB in an effort to license their invention to MLB. MLB declined the offer. The Mockrys again approached MLB, and MLB again declined on January 24, 2001, in a letter signed by Bud Selig, Commissioner of MLB. The Mockrys again attempted to license their invention to MLB during 2004 as well, but to no avail.

The '716 Patent ultimately was issued on December 8, 2009. The claims in the '716 Patent cover a process designed to allow one to enjoy a complete baseball game in approximately fifteen minutes. It is now conceded by both parties that Claim 1 is the important claim in the present case, and the only claim at issue in the present motions. Claim 1 describes the following steps:

>(1) recording each appearance-at-bat for every player and game action resulting from an appearance-at-bat to produce a game recording;
>
>(2) editing the game recording of each appearance-at-bat to produce an edited recording by deleting substantially all game action other than (i) game action from a final pitch thrown to each player, (ii) successful attempts of runners on base to advance to another base not associated with the game action resulting from the final pitch and (iii) unsuccessful attempts of the runners on base to advance

      to another base resulting in and not associated with the game action resulting from the final pitch;

      (3)  obtaining subscribers for viewing the edited recording and

      (4)  playing or broadcasting the edited recording as a condensed recorded game for viewing by the subscribers.

The parties have not completely detailed the procedural history surrounding the issuance of the '716 Patent.  However, it is apparent from the record that the Mockrys' application was rejected by the PTO once, and that the Mockrys subsequently appealed this determination to the Board of Patent Appeals and Interferences, which allowed the patent to issue by a two to one vote.

During the time period between plaintiff's invention of Baseball Quick and the issuance of the '716 Patent, MLB developed and introduced its own similar product called "Condensed Games."  MLB's Condensed Games are condensed versions of a baseball game that, like the Mockrys' Baseball Quick invention, enable viewers to watch the crucial plays of a baseball game in a short period of time.  Baseball Quick claims that these Condensed Games infringe the '716 Patent.

<u>The Causes of Action and the Present Motions</u>

     Baseball Quick seeks remedies for alleged infringement of the '716 Patent.  In addition to its basic contention that MLB committed infringement after the patent was issued, Baseball Quick argues that it is entitled to provisional rights during the time the application was pending.

MLB moves for summary judgment dismissing the cause of action for infringement. MLB proposes a construction of Claim 1 of the '716 Patent. Based on that construction, MLB argues that Baseball Quick cannot possibly prove infringement of Claim 1. Baseball Quick has set forth its own proposed construction of Claim 1 and argues that under either its construction or MLB's construction, summary judgment should be denied. MLB also seeks a ruling in its favor on two particular issues. MLB claims that it cannot be liable for infringement in connection with those Condensed Games it created after the issuance of the '716 Patent where part of the activity—namely the recording of baseball games—occurred before issuance of the patent. MLB also contends that Baseball Quick has no valid case of provisional rights.

Baseball Quick also seeks discovery under Rule 56(d) to assist it in dealing with the summary judgment motion. It also moves for sanctions under Rule 56(h).

## DISCUSSION

Infringement of Claim 1

Under MLB's proposed claim construction, Claim 1 requires that (1) each use of the method create a recording that includes the final pitch of each at-bat; and (2) the edited recordings be played to "subscribers" who pay for the right to view the edited recording. Baseball Quick disputes this claim construction, and claims that the edited recordings

do not need to include the final pitch of every at-bat, nor do any subscribers need to be paying subscribers.

First, MLB argues that it has not infringed Claim 1 because its Condensed Games, with rare exceptions, do not include the final pitch for each at-bat. MLB therefore argues that it is entitled to summary judgment on this issue, allowing perhaps for some de minimis degree of infringement. The court held an extensive hearing today, which included a lengthy discussion of these issues. The court concludes that the issues cannot be decided on summary judgment. For the reasons developed more fully at the hearing, it is not clear at the present time if Claim 1 should be construed to require a showing of the final pitch of each at-bat. Moreover, the record is not fully developed as to what the Condensed Games actually show. It would seem logical that the final pitch to a batter would generally be of interest. There surely might be exceptions to this. However, the facts are not clear enough on this point to justify summary judgment.

Second, MLB also initially argued that it did not infringe Claim 1 because it did not offer its Condensed Games to paid subscribers. MLB claimed that all of its Condensed Games were available for free on its website, with no payment, password, or login required. Baseball Quick contested this interpretation of "subscribers" and argued that "agreement or assent," not payment, was all that was required to be a subscriber. Baseball Quick also set forth sufficient evidence to create an issue of fact

that under either of the dueling definitions of subscribers, MLB was offering its Condensed Games to subscribers. In its reply papers, MLB withdrew its argument concerning subscriptions, explicitly conceding that there "may be" issues of material fact relating to the application of that claim term. Therefore, summary judgment is also inappropriate on this issue.

Summary judgment is denied with respect to infringement of Claim 1, with the exception of an issue to be discussed shortly.

The court will not at this time engage in claim construction of the disputed terms because it is not necessary for the rulings just announced.

Baseball Games Occurring Before the Issuance of the '716 Patent

MLB also seeks summary judgment with respect to its condensed versions of baseball games that were played before the issuance of the '716 Patent on December 8, 2009. This argument does not rely on MLB's proposed, disputed construction of Claim 1 of the '716 Patent. Rather, according to MLB, a method patent cannot be infringed unless all the steps of the method are performed during the term of the patent. Because live baseball games are recorded when they occur, MLB claims it cannot have infringed Claim 1 of the '716 Patent by making recordings of baseball games before the issuance of the '716 Patent and then editing and providing them to subscribers after the issuance of the '716 Patent.

MLB relies on Monsanto Co. v. Syngenta Seeds, Inc., 503 F.3d 1352 (Fed. Cir. 2007).  In that case, the plaintiff argued that the defendant had infringed its method patent by completing one of four steps during the patent term.  The other three steps of the method had been completed before the patent term, by the eventual patent holder.  The court found no infringement of the method patent because three steps occurred before the issuance of the patent.  Id. at 1359-60.

Here, one of the steps in Claim 1 requires "recording each appearance-at-bat for every player and game action resulting from an appearance-at-bat to produce a game recording."  Baseball Quick claims that MLB infringed its patent by creating Condensed Games of baseball games that occurred both before the patent issued on December 8, 2009, and after December 8, 2009.  However, it is impossible for MLB to perform the step of recording a baseball game that occurred before December 8, 2009, after December 8, 2009.  Thus, it is not possible for MLB to infringe the '716 Patent by making Condensed Games of baseball games played prior to December 8, 2009, because MLB would not be performing all of the steps required in Claim 1 of the '716 Patent during the term of the patent.

Baseball Quick attempts to distinguish Monsanto by arguing that in Monsanto, it was actually the patent holder who had performed the three steps prior to issuance of the patent.  Baseball Quick claims that Monsanto is distinguishable because here, MLB performed one of the

- 8 -

steps, without authority, before the term of the patent. Although Baseball Quick's characterization of the facts of Monsanto is accurate, the rule announced in Monsanto applies more broadly. Monsanto held that "infringement of a multi-step method claim cannot lie by the performance of a single step after issuance of the patent when the initial steps were performed prior to issuance." 503 F.3d at 1360; see also id. ("This case lacks any basis for infringement under claim 1 because [three] steps occurred before patent issuance."); 35 U.S.C. § 271(a) (requiring that infringement occur "during the term of the patent").

Accordingly, defendants are entitled to partial summary judgment, to the effect that they cannot be liable for making Condensed Games of baseball games that were filmed prior to the issuance of the '716 Patent.

Provisional Rights

MLB also claims it is entitled to summary judgment on Baseball Quick's claim for royalties during the period between the posting of its patent application and the issuance of the patent.

As discussed above, generally a patentee can only recover for infringement that occurs after issuance of the patent. 35 U.S.C. § 271(a); id. § 154(a)(2). However, under § 154(d)(1), a patent holder has "provisional rights" to recover reasonable royalties for infringing conduct that occurred prior to the issue date of the patent. The right to a royalty attaches only where the "invention as claimed in the patent is substantially identical to the invention as claimed in the published

patent application." Id. § 154(d)(2); see Loops, LLC v. Phoenix Trading, Inc., No. C08-1064 (RSM), 2010 U.S. Dist. LEXIS 78426, at *14 (W.D. Wash. July 30, 2010) (citing Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1346 (Fed. Cir. 1998)).  This analysis requires a comparison of the scope of the claims in the patent application and the issued patent.  Laitram, 163 F.3d at 1346.  Although an "amendment that merely clarifies the terms of a claim is not a substantial change, . . . an amendment that narrows the scope of a claim is a substantial change."  Prestige Pet Products, Inc. v. Pingyang Huaxing Leather & Plastic Co., 767 F. Supp. 2d 806, 812 (E.D. Mich. 2011) (citing Bloom Eng'g Co. v. N. Am. Mfg. Co., 129 F.3d 1247, 1250 (Fed. Cir. 1997)).

    Here, both the invention claimed in the published application and the invention claimed in the issued '716 Patent require recording a baseball game and editing the game.  The patent application also provided for delivering the game to subscribers over the Internet.  The patent itself provided for playing or broadcasting the recorded game for viewing by subscribers.  These two passages regarding subscribers are essentially synonymous.  However, MLB alleges that there is a difference between the patent application and the actual patent because the actual patent describes "obtaining subscribers," and this precise language is not contained in the application.  The language about "obtaining" does not involve anything approaching a difference of substance from the application.

Therefore, the court denies MLB's request for a judgment denying provisional rights to Baseball Quick.

Rule 56(d) Motion

Baseball Quick also moves for discovery to assist it in opposing the summary judgment application of MLB. Such discovery is not necessary and would not be helpful.

Motion for Sanctions

Baseball Quick contends that MLB should be sanctioned under Rule 56(h) for submitting false sworn statements in declarations, in bad faith.

The court declines to impose sanctions. Any misstatements were either mistakes or have been corrected, and there has been no prejudice to Baseball Quick.

## Conclusion

For the foregoing reasons, the motion for summary judgment is granted in part and denied in part. The motions for discovery under Rule 56(d) and sanctions under Rule 56(h) are denied.

This opinion resolves the motions listed as numbers 55, 63, and 78 on the docket.

Dated: New York, New York
March 30, 2012

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/12

## Conclusion

For the foregoing reasons, the motion for summary judgment is granted in part and denied in part. The motions for discovery under Rule 56(d) and sanctions under Rule 56(h) are denied.

This opinion resolves the motions listed as numbers 55, 63, and 78 on the docket.

Dated: New York, New York
       March 30, 2012

/s/ Thomas P. Griesa
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/12