**≡FOLEY**

FOLEY & LARDNER LLP

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  10/8/13

ATTORNEYS AT LAW

777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202-5306
414.271.2400 TEL
414.297.4900 FAX
WWW.FOLEY.COM

CLIENT/MATTER NUMBER
080200-0292

October 7, 2013

**Via Hand Delivery**

Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 1007-1312



RECEIVED
OCT 08 2013
KATHERINE B. FORREST
U.S. DISTRICT JUDGE
S.D.N.Y.

Re:  *Baseball Quick, LLC v. MLB Advanced Media, L.P. et al.,*
Case No. 11-cv-01735(KBF)

Dear Judge Forrest:

Pursuant to your Honor's Order of October 1, 2013 (*see* Dkt. No. 136), we have requested additional information about the relevant background and statistics of Cameron Saadat, the USPTO Examiner responsible for the *inter partes* re-examination of the patent-in-suit. The enclosed report was ordered from and generated by JudicialStats (http://www.judicialstats.com) using its database of information regarding re-examinations at the USPTO. Notably, the one *inter partes* re-examination handled by Examiner Saadat for which an appeal has been decided was affirmed by the Patent Trial and Appeal Board (P.T.A.B.).[1] (*See* JudicialStats Report at 2.)

The enclosed report also includes information regarding reversal rates for all *inter partes* re-examinations throughout the USPTO and, more specifically, reversal rates for all *inter partes* re-examinations in the Group Art Unit in which Examiner Saadat and the re-examination of the patent-in-suit are assigned, Group Art Unit 3992. (*See* JudicialStats Report at 1-2.) For all *inter partes* re-examinations appealed to the P.T.A.B. (and the B.P.A.I. before that), more than 92% were *not* reversed on appeal. (*Id.* at 2.) Similarly, for all *inter partes* re-examinations in Group Art Unit 3992 appealed to the P.T.A.B. (and the B.P.A.I. before that), more than 92% were *not* reversed on appeal. (*Id.* at 2.)

According to the report, Examiner Saadat has 12 years of experience at the USPTO, and has examined 191 regular utility patent applications and has examined, or is currently examining, 34 re-examinations. (*See* JudicialStats Report at 1.) Examiner Saadat is currently

---

[1] As of September 16, 2012, as required by the America Invents Act, the USPTO's board of administrative patent judges changed its name from the Board of Patent Appeals and Interferences (B.P.A.I) to the Patent Trial and Appeal Board (P.T.A.B.). Please note that the JudicalSTATS re-examination statistics report uses the pre-AIA name B.P.A.I.

| BOSTON | JACKSONVILLE | MILWAUKEE | SAN DIEGO | SILICON VALLEY |
|--------|--------------|-----------|-----------|----------------|
| BRUSSELS | LOS ANGELES | NEW YORK | SAN DIEGO/DEL MAR | TALLAHASSEE |
| CHICAGO | MADISON | ORLANDO | SAN FRANCISCO | TAMPA |
| DETROIT | MIAMI | SACRAMENTO | SHANGHAI | TOKYO |
| | | | | WASHINGTON, D.C. |



**FOLEY**

FOLEY & LARDNER LLP

Honorable Katherine B. Forrest
October 7, 2013
Page 2

assigned to Group Art Unit 3992, an art unit dedicated to re-examinations. (*Id.* at 1, 6.) Examiner Saadat was promoted to this art unit in 2010. Prior to Group Art Unit 3992, Examiner Saadat worked in art units 3713, 3714, and 3715, examining applications relating to amusement and educational devices including, but not limited to, electrical amusement devices. (*Id.* at 6.)

Since promotion to the re-examination group in 2010, Examiner Saadat has worked on nine *inter partes* re-examinations including the re-examination of the patent-in-suit. (*See* JudicialStats Report at 3-4.) One of the other *inter partes* re-examinations that Examiner Saadat is currently working on, Appl. No. 95/001,750, pertains to a patent from the exact same patent class (No. 473) as the patent-in-suit. As mentioned above, only one of Examiner Saadat's *inter partes* re-examination decisions has been appealed to and decided by the P.T.A.B. (*Id.*) According to the Report: "[t]he [P.T.A.B.] agreed with Examiner Saadat and sustained Examiner Saadat's decision." (*Id.*)[2]

*Inter partes* reexamination is a process involving both the patent holder and the challenger to the patent (as contrasted with *ex parte* reexamination where the challenger cannot fully participate). As reflected in the statistics, this robust process leads to sound decisions that typically survive scrutiny on review. This is further evidence that the conclusions set forth in Examiner Saadat's Action Closing Prosecution are highly unlikely to be reversed on any appeal and that the claims of the patent-in-suit will not survive re-examination.

Respectfully submitted,

Cynthia J. Rigsby

cc:      Counsel of Record

Enclosures

Ordered: Post to docket.
Per the Court's Individual
Practices in Civil Cases,
letters should now be
filed on ECF.

10/8/13   K. B. Forrest

Katherine B. Forrest
United States District Judge

---

[2] For more information about the particular *inter partes* appeal involving Examiner Saadat, I enclose the P.T.A.B.'s decision for *VS2 Worldwide Communications, Inc. v. Robert E. Houchin, Inter Partes* Reexamination Control No. 95/001,479, affirming Examiner Saadat's rejection of certain claims in the re-examined patent.

© 2013 Judicial STATS
Information about decisionmakers

# SPECIALIZED RE-EXAMINATION STATISTICS REPORT FOR EXAMINER CAMERON SAADAT

## Background

- Examiner Saadat has been with the United States Patent and Trademark Office for 12 years, since graduation from Milwaukee School of Engineering (B.S., 2001).

- In that time, he has examined 191 regular utility applications, and, in recent years, he has worked on 34 re-examinations, in GAU 3992.

## Contact Information

- Position:  Primary Examiner

- Supervisor (SPE): Andrew Fischer

- Current Art Unit: GAU 3992

- Previous Art Units: GAU 3713, 3714 and 3715

- Office: P/3992

- Tel.: 571.272.4443

## Inter Partes Re-Examination Appeal Rate (percentage of inter partes applications ripe for appeal appealed to the B.P.A.I.)

**100% Appealed**



**Examiner Saadat**

**20.23% Appealed**



**All Inter Partes Re-Exams at the PTO**

**18.36% Appealed**



**Inter Partes Re-Exams - GAU 3992**

## Analysis

Inter partes re-examinations handled by Examiner Saadat were subject to appeal at a substantially higher rate than re-examinations handled at the PTO and within his art unit generally.  His experience with inter partes re-examinations is somewhat limited, because, for the majority of his time at the PTO, he has also been employed as a primary examiner, examining ordinary utility applications.

Created: October 4, 2013

© 2013 Judicial STATS
Information about decisionmakers

© 2013 Judicial STATS

# SPECIALIZED RE-EXAMINATION STATISTICS
# REPORT FOR EXAMINER CAMERON SAADAT (2 of 6)

## Re-Examination Reversal Rate (percentage of resolved inter partes re-examination appeals reversed by the B.P.A.I.)

**0%**
**Reversed**

**7.69%**
**Reversed**

**7.89%**
**Reversed**

**Examiner Saadat**      **Average - All Inter Partes Re-Exams at the PTO**      **Average - GAU 3992**

## Analysis

Examiner Saadat's inter partes re-examinations that were subjected to appeal were sustained at a rate of 100%, which is higher than the general rates at the USPTO and within his Art Unit.  Although, as mentioned previously, his experience in inter partes re-examinations is somewhat limited, the single inter partes re-examination of his that was subject to appeal at the BPAI was sustained, with respect to each of three claims subject to appeal.

In more detail, in Re-Examination Application No. 95/001,479, a lottery gaming patent was challenged by a re-examination requester, and Examiner Saadat rejected two claims (43 and 44) on obviousness grounds.  The patent owner appealed, but Examiner Saadat's determination was sustained with respect to both claims.  Among other reasoning, Examiner Saadat gave the term "sweepstakes" its broadest consistent, reasonable interpretation, as encompassing a wide array of games of chance.  In so doing, Examiner Saadat rejected the patent owner's argument that the specification limited the definition of the term "sweepstakes" to "legal" games. (See Inter Partes BPAI Decision in Re-Examination No. 95/001,479, at 4 - 12.)

The BPAI agreed with Examiner Saadat, and sustained Examiner Saadat's decision. (Id.)

Two other inter partes re-examinations handled by Examiner Saadat have also been subject to appeal proceedings, but have not yet been the subject of rendered BPAI decisions.

Created: October 4, 2013

© 2013 Judicial STATS™

© 2013 JudicialSTATS
information about decisionmakers

# SPECIALIZED RE-EXAMINATION STATISTICS
# REPORT FOR EXAMINER CAMERON SAADAT (3 of 6)

## Complete List of Inter Partes Re-Examination Applications Handled by Examiner Cameron Saadat

| App. No. | Filed | Class/Description |
|----------|-------|-------------------|
| 95/001,479 | Nov. 2, 2010 | 463, Amusement Devices: Games |
| 95/001,750 | Sept. 26, 2011 | 473, Games Using Tangible Projectile |
| 95/001,809 | Nov. 7, 2011 | 715, Data Process.: Presentation . . . |
| 95/001,919 | March 2, 2012 | 704, Data Process.: Liguistics |
| 95/001,923 | March 2, 2012 | 710, Electrical Computers and Data . . |
| 95/001,925 | March 2, 2012 | 709, Electrical Computers and Dig. . . . |
| 95/001,931 | March 9, 2012 | 073, Measuring and Testing |
| 95/002,145 | Sept. 6, 2012 | 463, Amusement Devices: Games |
| 95/002,347 | Sept. 14, 2012 | 473, Games Using Tangible Projectile |

Created: October 4, 2013

© 2013 JudicialSTATS
information about decisionmakers

# SPECIALIZED RE-EXAMINATION STATISTICS
# REPORT FOR EXAMINER CAMERON SAADAT (4 of 6)

## Bonus Data - Claim Disposal on Inter Partes Re-Examintations with Examiner Saadat



**22.88 Claims Re-examined**

**18.00 Claims Rejected or Cancelled**

**0.00 Claims Confirmed**

| Average No. of Claims per Re-exam | Average No. Rejected/Cancelled | Average No. Confirmed |

## Bonus Data - The Only Inter Partes Re-Examination Denied by Examiner Saadat

| App. No. | Filed | Class/Description |
|---|---|---|
| 95/001,931 | March 9, 2012 | 073, Measuring and Testing |

Created: October 4, 2013

© 2013 Judicial STATS

# SPECIALIZED RE-EXAMINATION STATISTICS REPORT FOR EXAMINER CAMERON SAADAT (5 of 6)

## Special Notes Regarding Examiner Saadat

- Examiner Saadat is a moderately experienced examiner, with strong ties to the PTO.  He has spent his entire post-college career with the PTO (12 years), and another family member appears to also be employed there.

- Examiner Saadat was reassigned to an Art Unit dedicated to re-examination proceedings - namely Group Art Unit 3992 - in 2010.

- Prior to that reassignment, he worked in Group Art Units 3713, 3714 and 3715, examining applications relating to Amusement and Education Devices (including, but not limited to, electrical amusement devices).

- Additional data, concerning Examiner Saadat's experience as a Primary Examiner handling ordinary utility applications, as well as Post-Grant Proceedings, is also available from JudicialStats.

- For example, data concerning patent rates and pendency, and the impact of key words used in prosecution with Examiner Saadat, are available.

© 2013 JudicialSTATS
information about decisionmakers

© 2013 JudicialSTATS

# SPECIALIZED RE-EXAMINATION STATISTICS
# REPORT FOR EXAMINER CAMERON SAADAT (6 of 6)

## Important Disclosures

Use of this report, and the data contained herein, is subject to the Descriptions, Disclaimers, Terms and Conditions of JudicialStats.com, which are made available on that website.

Permitted access to this report and the information contained herein is restricted to the individual purchaser of this report, for assisting in the analysis of matters under his or her, or his or her attorneys', control. Although such matters may be of legal significance, nothing in this report is or may be construed or understood to be legal advice, or representative of an engagement to perform legal services. If you need legal advice, please retain an attorney or other licensed person and/or firm practicing legally in the subject matter of and jurisdiction governing your legal matter, if any.

The data in this report includes historical data, and no future event, probabilities or investments should be made exclusively upon the data herein. Past performance does not guarantee any future performance or outcome. The data in this report may be from a set time period in order to provide comparable data between the examiner and/or art unit subject of the report and other examiners, art units and/or application sets across a common time period.

This report and its data may not be used to build a derivative work and may not otherwise be sold or redistributed without express, written permission from authorized agents of JudicialStats.com and Renowok LLC. Reasonable samples may be cited, however, with proper attribution to JudicialStats.com.

Additional data, reports and research may be available concerning the examiner and/or art unit(s) subject to this report, and many other subjects. Inquiries and feedback are welcome at the following e-mail address:

contact@judicialstats.com

Thank you very much for your patronage, and we look forward to working with you again.

Created: October 4, 2013



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,479 | 11/02/2010 | 7316614 | V047 7000 | 2934 |

7590        08/27/2013

KIMBERLY GATLING
SMITH MOORE LEATHERWOOD LLP
300 N GREENE STREET, SUITE 1400
GREENSBORO, NC 27401

| EXAMINER |
|---|
| SAADAT, CAMERON |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/27/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

VS2 WORLDWIDE COMMUNICATIONS, INC.
Requestor

v.

ROBERT E. HOUCHIN
Patent Owner and Appellant

Appeal 2013-009090
*Inter Partes* Reexamination Control No. 95/001,479
United States Patent 7,316,614 C2
Technology Center 3900

Before KEVIN F. TURNER, STANLEY M. WEINBERG, and
GREGG I. ANDERSON, *Administrative Patent Judges*.

ANDERSON, *Administrative Patent Judge*.

DECISION ON APPEAL

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

I.   STATEMENT OF THE CASE

   A.   SUMMARY

Claims 1-15 and 17-44 are subject to reexamination.  App. Br. 2 [1];
Right of Appeal Notice (RAN) 2.  Patent Owner ("Appellant") appeals
under 35 U.S.C. §§ 134(b) and 315(a) the Examiner's decision to reject
claims 43 and 44.  Claims 25 and 37 have been cancelled.  Claims 1-15, 17-
24, 26-36 and 38-42 are confirmed.  RAN 2.

Requester has not appealed nor filed a response to Patent Owner's
brief.

The patent involved in this reexamination proceeding, U.S. Pat. No.
7,316,614 C2  (the "'614 Patent") issued to Michael J. Dietz, Earl D. Morris,
Mark Olmstead, Robert E. Houchin, and Johnney R. Weaver on January 8,
2008.  The '614 Patent was modified by a Certificate of Correction on
January 29, 2008 to change the inventive entity to Robert E. Houchin; a first
Ex Parte Reexamination Certificate 7,316,614 C1 issued to Robert E.
Houchin on August 18, 2009; and a second Ex Parte Reexamination
Certificate 7,316,614 C2 issued to Robert E. Houchin on December 7, 2010.

   B.   THE INVENTION

---

[1] Patent Owner's Appeal Brief filed October 1, 2012 ("App. Br."),
Examiner's Answer mailed April 16, 2013 ("Ans.") and Reply Brief filed
April 26, 2013 ("Reply Br.").

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

The '614 Patent describes a network for conducting a sweepstakes. A
consumer purchases a prepaid voucher, which stores digital data relating to
the value of the voucher. The prepaid voucher is redeemable for goods and
services, including a prepaid phone card ("PPC"). The voucher is activated
at a terminal by the consumer. Once activated, the voucher can be recharged
to add addition funds. A sweepstakes participation terminal includes a
reader which reads encoded digital information on the voucher and allows
the consumer to play sweepstakes games using the voucher. A system
manager computer is in communication with the participation terminal. The
manager computer manages the sweepstakes games, stores play information
and transmits game information to the participation terminals. *See* '614
Patent, col. 1, ll. 41-59, col. 4, ll. 9-col. 5, l. 31, col. 10, l. 31-col. 11, l. 5,
Fig. 5.

Claim 43, which is illustrative of the appealed subject matter, reads as
follows:

43. A network for conducting a sweepstakes comprising:
a prepaid voucher for goods and services unrelated to the
sweepstakes;
a means for activating the prepaid voucher;
at least one sweepstakes participation terminal located at a game site,
the at least one sweepstakes participation terminal being adapted for data
communication with the prepaid voucher; and
at least one system manager computer in data communication with the
at least one sweepstakes participation terminal;
wherein the at least one sweepstakes participation terminal
is an 8-liner machine having
a housing;
an 8-liner microprocessor disposed within the housing for
controlling the 8-liner machine;
a video display carried by the housing;

3

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

> at least one button for inputting commands to the 8-liner machine; and
> a conversion kit for converting the 8-liner machine to the at least one sweepstakes participation terminal, the kit having a conversion microprocessor in data communication with the 8-liner microprocessor and the system manager computer; and
> a means for reading data from and writing data to the prepaid voucher; and
> wherein upon activation of the prepaid voucher, a corresponding number of entry units for optionally entering in the sweepstakes are provided. (App. Br. 13-14, Claims App'x.).

### C.   THE PRIOR ART

| | | |
|---|---|---|
| Walker | WO 99/20013 | Published Apr. 22, 1999 |
| Luciano '477 | US 2003/0092477 A1 | Published May 15, 2003 |
| Luciano '067 | US 6,500,067 B1 | Issued Dec. 31, 2002 |
| Cannon | US 7,686,687 B2 | Issued March 30, 2010 |
| | | (Published Aug. 21, 2003) |
| Stimson | US 5,577,109 | Issued Nov. 19, 1996 |
| Rowe | US 6,969,319 B2 | Issued Nov. 29, 2005 |
| Clapper, Jr. | US 5,928,082 | Issued Jul. 27, 1999 |
| Baltz | US 6,852,029 B2 | Issued Feb. 8, 2005 |
| Brown | US 2004/0249712 A1 | Published Dec. 9, 2004 |

### D.   THE REJECTIONS

The Examiner adopted the following proposed rejections:

1. Claims 43 and 44 are rejected under 35 U.S.C. §103 as being obvious over Luciano '067, Cannon, Walker, admitted prior art ("APA"), Rowe, and Baltz.  Ans. 2, RAN 7-16.

4

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

2. Claims 43 and 44 are rejected under 35 U.S.C. §103 as being obvious over Clapper, Cannon, Stimson, Luciano '067, Luciano '477, APA, Rowe, and Baltz. Ans. 2, RAN 17-26.

3. Claims 43 and 44 are rejected under 35 U.S.C. §103 as being obvious over Clapper, Cannon, Stimson, Luciano '067, Brown, APA, Rowe, and Baltz. Ans. 2, RAN 27-38.

E.   ISSUE PRESENTED

Giving "sweepstakes" its broadest reasonable interpretation consistent with the Specification, do the references teach a "sweepstakes" as recited in in claims 43 and 44?

II.   ANALYSIS

*Rejection of Claims 43 and 44 under 35 U.S.C. §103 as Obvious Over Luciano '067, Cannon, Walker, APA, Rowe and Baltz*

A.   INTRODUCTION

We begin by construing the key disputed limitation of representative claim 43, "sweepstakes," which is recited multiple times in the claims.

B.   ARGUMENTS PRESENTED

Appellant contends "sweepstakes" should be defined as a finite number of game entries and finite number of opportunities to win a prize from those game entries. App. Br. 5. Based on the Specification, Appellant argues "sweepstakes" is a game other than a game of chance. App. Br. 5-7,

5

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

Reply Br. 5-8. Importantly, it is Appellant's position that "sweepstakes" as recited is a legal and not an illegal "random game of chance." Reply Br. 5, 8.

In contrast to the narrow scope argued by Appellant, the Examiner gives "sweepstakes" its broadest reasonable interpretation consistent with the Specification. Ans. 4. Doing so, the Examiner finds "sweepstakes" is "a contest or any of various lotteries." Ans. 4 (citing *Merriam Webster's Collegiate Dictionary* (10th edition, copyright 1996)).[2]

Appellant's arguments in support of the proposed definition of "sweepstakes" are reproduced below.

1.   "Sweepstakes" must be interpreted as a "legal" sweepstakes because the Specification describes different attributes of a "legal" game, including:

   a.   a finite number of entries and corresponding prizes, as required to be legal (App. Br. 5).

   b.   participants must obtain sweepstakes entries by paying for valuable goods/services or requesting free entries. (App. Br. 5-6).

   c.   prohibiting placement of wagers or bets to receive additional sweepstakes entries (App. Br. 6-7).

   d.   enabling customers to participate in sweepstakes via game interfaces that merely simulate random games of chance (App. Br. 8-9).

---

[2] Sweepstakes: 1 a: a race or contest in which the entire prize may be awarded to the winner; b: contest, competition 2: any of various lotteries.

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

The Appellant cites to the Specification for support that
"sweepstakes" includes a "finite" limitation on the number of game entries.
App. Br. 5, Reply Br. 5-6.   (citing Spec., col. 5, ll. 25-31 ("...contain the
finite sweepstakes play information...")).   A preferred embodiment section
of the Specification is cited to show prize distribution tables, e.g., odds of
winning, and that the "sweepstakes" is played and a new play starts. *Id.*
(Spec., col. 5, ll. 52-59).

The Examiner finds the portions of the Specification relied on for the
"sweepstakes" definition are, in one instance, describing an example. Ans. 5
(citing Spec. col. 5, ll. 24-31 ("For example...")).   In the second portion of
the Specification relied on by Appellant, the citation refers to a preferred
embodiment.   Ans. 5-6 (citing Spec., col. 5, ll. 52-59 ("It is preferred...")).

Appellant argues payment for valuable goods and services or the
opportunity to request free entries into the "sweepstakes" without the
purchase of any goods or services at all makes the game legal.   App. Br. 5-6
(citing Spec., col. 1, l. 61-col. 2, l. 8).   The Appellant cites to the
Specification as describing the voucher used to enter the "sweepstakes" as
being for "valuable goods and services unrelated to the sweepstakes."   App.
Br. 6 (citing Spec., col. 2, ll. 24-29; col. 3, l. 60-col. 4, l. 8).

The Examiner agrees that the Specification of the '614 Patent supports
the proposition that a legal game of chance requires the voucher purchased
have more than nominal value in goods or services unrelated to playing the
game. Ans. 7 (citing Spec., col. 1, l. 61-col. 2, l. 8).   However, the Examiner
finds it is improper to import this limitation into the claims. *Id.* The
Examiner restates the position that "the broadest reasonable interpretation of

7

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

a 'sweepstakes' is not limited to a legal "sweepstakes" and "does not require that the sweepstakes not allow placement of wagers or bets to receive additional sweepstakes entries." Ans. 8.

Appellant argues the Specification merely describes games which merely simulate illegal random games of chance. App. Br. 8-9. Reply Br. 8-10. One game that may be participated in is "***simulated*** poker and 8-liner type slot machine games, **which are used to reveal the sweepstakes prizes at the terminals.**" App. Br. 8 (citing Spec., col. 9, ll. 18-21). The Examiner finds that the argument is not recited in the rejected claims. Ans. 9-10.

Appellant concludes that, necessarily, "sweepstakes entries can't be wagered or betted in order to receive more entries, as that would be completely contrary to those aforementioned elements of a sweepstakes." App. Br. 6, Reply Br. 7. Based on the attributes described in the Specification, the "sweepstakes" claimed is legal and not gambling in most jurisdictions. App. Br. 5, Reply Br. 5-6.

We agree with the Examiner that the Specification's description of requirements for a legal "sweepstakes" does not rise to the level of a definition. To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning. This clear expression need not be in *haec verba* but may be inferred from clear limiting descriptions of the invention in the specification or prosecution history. *Aventis Pharma S.A. v. Hospira, Inc.,* 675 F.3d 1324, 1330 (Fed. Cir.2012), quoting *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002).

8

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

The Appellant must do so by placing such definitions in the Specification with sufficient clarity to provide a person of ordinary skill in the art with clear and precise notice of the meaning that is to be construed. See also *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994) (although an inventor is free to define the specific terms used to describe the invention, this must be done with reasonable clarity, deliberateness, and precision; where an inventor chooses to give terms uncommon meanings, the inventor must set out any uncommon definition in some manner within the patent disclosure so as to give one of ordinary skill in the art notice of the change).

There is a heavy presumption that terms of a patent claim take on their "plain, ordinary, and accustomed meaning to one of ordinary skill in the relevant art." *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.* 318 F.3d 1143, 1148 (Fed. Cir. 2003). Although a patent owner may overcome that presumption by acting as their own lexicographer so as to assign a special definition to a term, that definition must be "clearly set forth" and "explicit." *Id.*

The Examiner cited law supporting the proposition that limitations from the Specification are not read into the claims. Ans. 10 (citing *In re Van Geuns,* 988 F.2d 1181 (Fed. Cir. 1993)). Nevertheless, where sufficient clarity is provided it is proper to rely on the Specification for a defined meaning of a term. However, where the clarity is absent, it is improper to use the Specification to limit the scope of the claims in order to avoid prior art.

The Specification of the '614 Patent does not clearly set forth a definition of "sweepstakes" that would be as limited as proposed by Appellant. Indeed, as the Examiner finds, the Specification is open ended as

9

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

to the meaning of "sweepstakes." The portions relied on by Appellant are, on the one hand clearly set for as an example and on the other hand as a specific embodiment. Neither rise to the level of a clearly defined term. Rather, the portions of the Specification relied on by Appellant would lead the person of ordinary skill to consider "sweepstakes" broadly. Appellant does not respond the position of the Examiner regarding the fact that the relied on portions of the Specification are respectively an example and an embodiment.

Appellant attempted to add "legal" to the claim recitations for "sweepstakes" in an amendment filed October 28, 2011. Ans. 9, RAN 3. The Examiner did not enter the amendment as the amendment came after close of prosecution (ACP). RAN 3. We note this procedural matter because the attempted amendment highlights the fact that Appellant's proposed definition of "sweepstakes" was recognized as lacking clarity without "legal." As discussed above, lack of clarity precludes reliance on what is disclosed in the Specification.

The Examiner concluded that the definition of "sweepstakes" as a "legal" game was indefinite (Ans. 8) and did not support Appellant's attempt to be his own lexicographer. "Legal" is unclear because what is "legal" in the field of conducting sweepstakes varies from one jurisdiction to another. *Id.* Appellant's response is that "legality" is neither vague nor indefinite. PO Br. 7, Reply Br. 8. In addition, Appellant points to other issued patents which include claims incorporating a "legal" limitation. *Id.*

That other patents allow a recitation of "legal" (App. Br. 7, Reply Br. 8), suggesting the term is definite is not persuasive in this case. The

10

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

Examiner correctly cited authority that the merits of other patents and allowability of other patents are irrelevant to the merits of this case. Ans. 9 (citing *In re Wertheim,* 191 USPQ 90 (1976), *In re Giolito,* 188 USPQ 645 (1976).

Appellant's conclusory assertion that what is legal is somehow known is not persuasive in view of the fact that Appellant provided evidence of record showing two states, Virginia and Florida, have separate statutes relating to what is gambling and what is not gambling. What the record shows is that at least two states have statutes relating to gambling. Whether those state statutes would agree as to the definition of what is a "legal" sweepstakes and not gambling is not argued. What the remaining state statutes require is likewise absent from the record.

Appellant has not persuaded us of any error in the meaning given "sweepstakes" by the Examiner. We find the positions taken by the Examiner to be supported by rational underpinnings.

2.  The cited prior art teaches away from the claimed invention (making it is impossible to combine the illegal and legal "sweepstakes" prior art references) (App. Br. 9-11).

The teaching away and improper combination arguments rely on an interpretation of "sweepstakes" that would exclude "illegal" games of chance. Because the teaching away and improper combination arguments are based on a distinction proffered by Appellant of the meaning of "sweepstakes" which we have found not persuasive, those arguments are likewise not persuasive of any error.

11

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

III.   CONCLUSION

The Examiner's decision to reject claims 43 and 44 as unpatentable under 35 U.S.C. § 103(a) over Luciano '067, Cannon, Walker, APA, Rowe and Baltz is sustained.

In view of our sustaining the obviousness rejection of claims 43 and 44 over Luciano '067, Cannon, Walker, APA, Rowe and Baltz, we do not reach the obviousness rejection of these same claims over different cited references. *See In re Gleave*, 560 F.3d 1331, 1338 (Fed. Cir. 2009) (not reaching other rejections after upholding an anticipation rejection).

IV.   DECISION

The Examiner's decision to reject claims 43 and 44 is affirmed.

AFFIRMED

12

Appeal 2013-009090
Reexamination Control 95/001,479
Patent US 7,316,614 C2

PATENT OWNER:

KIMBERLY GATLING
SMITH MOORE LEATHERWOOD LLP
300 N GREENE STREET, SUITE 1400
GREENSBORO NC 27401

THIRD PARTY REQUESTER:

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
ATTN: IP DOCKETING
PO BOX 7037
ATLANTA, GA 30357-0037